IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTIRCT OF WEST VIRGINIA
CHARLESTON

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(C)(1)(A) AND 3122(A)(1) FOR THE<br><br>(1) DISCLOSURE OF PROSPECTIVE CELL-SITE DATA AND E-911 PHASE II DATA;<br><br>(2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS; AND<br><br>(3) INSTALLATION OF A PEN REGISTER/TRAP AND TRACE DEVICE; AND<br><br>(4) USE OF A CELL SITE SIMULATOR TO LOCATE THE SUBJECT TELEPHONE NUMBER<br><br>ON 304-617-1711 | No. 2:21-mj-00084 |

## AFFIDAVIT IN SUPPORT OF PROBABLE CAUSE

I, Blade Secrist, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(c)(1)(A) for information associated with a cellular device assigned with the telephone number 304-617-1711 ("SUBJECT TELEPHONE NUMBER"), which is serviced by T-Mobile ("TELEPHONE SERVICE PROVIDER"). As a provider of wireless communications service, the TELEPHONE SERVICE PROVIDER is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

2. I also submit this affidavit in support of an application for a Search Warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic

investigative technique, described in Attachment B-2, to determine the location of the SUBJECT TELEPHONE NUMBER. The investigative technique described in Attachment B-2 involves the use of a Cell Site Simulator ("CSS").

3. Because the warrant seeks the prospective collection of information, including cell site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4) ("pen/trap device"), the requested warrant is designed also to comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

4. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an Application for Search Warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require the TELEPHONE SERVICE PROVIDER to disclose to the government the information further described in Section I of Attachment B-1. Upon receipt of the information described in Section I of Attachment B-1, government-authorized persons will review the information to locate items described in Section II of Attachment B-1.

5. I am a Deputy United States Marshal with the United States Marshal Service and have been employed since March 2020. I hold a Bachelor of Arts Degree in Criminology from West Virginia University. I have received over 1,000 hours of training at the Federal Law Enforcement Training Center and the United States Marshals Service Training Academy both located in Brunswick, GA. Prior to being employed by the United States Marshal Service, I was employed by Clarendon County Sheriff's Office, Clarendon County, South Carolina. My main duties at the Clarendon County Sheriff's Office were patrol officer, criminal investigator, special response team

operator, and member of the K9 tracking team. I received over 500 hours of training at the South Carolina Criminal Justice Academy. I have received extensive training, both formal and on-the-job. I am currently assigned to the Sothern District of West Virginia, Charleston Office, where my responsibilities include criminal investigations, fugitive investigations, and court operations.

6. The facts in this Affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this Affidavit, there is probable cause to believe that criminal violations of 21 U.S.C. § § 846 and 843(b) and 18 U.S.C. § 2. , have been committed by ELIJAH FIGG ("BANG"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and contraband of these crimes as further described in Attachment B-1.

8. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including the United States Marshals Service, is conducting a criminal investigation of ELIJAH FIGG ("BANG") regarding possible violations of 21 U.S.C. § § 846 and 843(b) and 18 U.S.C. § 2.

10. The Drug Enforcement Administration (DEA) is currently conducting a criminal investigation of FIGG and a federal arrest warrant has been issued in the Southern District of West

Virginia, Case No. 2:21-cr-00032-07, for his arrest for violations 21 U.S.C. § § 846 and 843(b) and 18 U.S.C. § 2. as further outlined a fifteen count, nine defendant indictment.

11. FIGG was intercepted during a T-III investigation being conducted by the DEA and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). To date, officers have been unable to locate FIGG to effectuate the arrest warrant in Case No. 2:21-cr-00032-07. However, on April 26, 2021, agents working with the United States Marshal Service arrested a known associate of FIGG, Joseph Patterson for distribution of Methamphetamine. Agents seized Patterson's cell phone and got a search warrant for the contents of the phone. Upon searching the phone, agents found a contact number listed as "BANG TGT." Joseph Patterson advised agents BANG TGT was in fact FIGG's alias. Patterson also advised he was in contact with FIGG as recently as April 21, 2021.

12. Based on my training and experience, a court order to obtain precision location information on the SUBJECT TELEPHONE NUMBER will assist investigators in locating FIGG to effect his arrest.

## APPLICABLE CELLULAR TECHNOLOGY

13. In my training and experience, I have learned that the TELEPHONE SERVICE PROVIDER is a company that provides cellular communications service to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information (1) about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the

cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect E-911 Phase II data about the location of the SUBJECT TELEPHONE NUMBER, including by initiating a signal to determine the location of the SUBJECT TELEPHONE NUMBER on TELEPHONE SERVICE PROVIDER's network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that TELEPHONE SERVICE PROVIDER can collect cell-site data about the SUBJECT TELEPHONE NUMBER. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as TELEPHONE SERVICE PROVIDER typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

16. Based on my training and experience, I know that each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers—as transmitted from a cellular device to a cellular antenna or tower—can be recorded by pen/trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

17. Based on my training and experience, I know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the TELEPHONE SERVICE PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT TELEPHONE NUMBER's user or users and may assist in the identification of co-conspirators and/or victims.

18. To facilitate execution of the requested CSS warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the SUBJECT TELEPHONE NUMBER or receiving signals from nearby cellular devices, including the SUBJECT TELEPHONE NUMBER. Such a device may function in some respects like a

cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the SUBJECT TELEPHONE NUMBER and thereby prompt it to send signals that include the unique identifiers of the device. Law enforcement may monitor the signals broadcast by the SUBJECT TELEPHONE NUMBER and use that information to determine the SUBJECT TELEPHONE NUMBER's location, even if it is located inside a house, apartment, or other building.

19. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the SUBJECT TELEPHONE NUMBER, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the SUBJECT TELEPHONE NUMBER, and law enforcement will limit collection of information from devices other than the SUBJECT TELEPHONE NUMBER. To the extent that any information from a cellular device other than the SUBJECT TELEPHONE NUMBER is collected by the law enforcement device, law enforcement will delete that information and will make no investigative use of it absent further order of the court, other than distinguishing the SUBJECT TELEPHONE NUMBER from all other cellular devices. The U.S. Marshals Service considers further details than those stated immediately above about CSS technology to be law enforcement sensitive; that is, disclosure of those details could be used by adversaries of law enforcement to thwart law enforcement efforts.

20. The execution of this warrant will not result in the seizure of any tangible property or any wire or electronic communication (as defined in 18 U.S.C. § 2510). To the extent that the

warrant authorizes the seizure of any stored wire or electronic information, that seizure is expressly authorized by 18 U.S.C. § 2703(c)(1)(A).

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed Search Warrant and orders, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. I also request that the Court direct the specified electronic service provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1 unobtrusively and with a minimum of interference with services, including by initiating signals to determine the location of the SUBJECT TELEPHONE NUMBER on their respective networks, and at such intervals and times as directed by the government. The government will compensate the electronic service providers for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the SUBJECT TELEPHONE NUMBER would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B-1, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct the TELEPHONE SERVICE PROVIDER to disclose to the government any information described in Attachment B-1 that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER. I also request that the Court direct the TELEPHONE SERVICE PROVIDER to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1 unobtrusively and with a minimum of interference with services of the TELEPHONE SERVICE PROVIDER, including by initiating a signal to determine the location of the SUBJECT TELEPHONE NUMBER on the network of the TELEPHONE SERVICE PROVIDER or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the TELEPHONE SERVICE PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONE NUMBER outside of daytime hours.

Respectfully submitted,

*Blade B. Secrist*
Deputy United States Marshal Blade Secrist
United States Marshals Service

Subscribed and sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 this 3rd day of May 2021.

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

1. The cellular telephone assigned call number 304-617-1711 with listed subscriber(s) unknown ("SUBJECT TELEPHONE NUMBER"), whose wireless service provider is T-Mobile ("TELEPHONE SERVICE PROVIDER PROVIDER").

2. Records and information associated with the SUBJECT TELEPHONE NUMBER that is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B-1

PARTICULAR THINGS TO BE SEIZED

I. **INFORMATION TO BE DISCLOSED BY THE PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the TELEPHONE SERVICE PROVIDER, including any information that has been deleted but is still available to the TELEPHONE SERVICE PROVIDER or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the TELEPHONE SERVICE PROVIDER is required to disclose to the government the following information pertaining to the SUBJECT TELEPHONE NUMBER listed in Attachment A and its related account with the TELEPHONE SERVICE PROVIDER ("SUBJECT ACCOUNT"):

**A. The following information about the customers or subscribers associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3. Local and long distance telephone connection records;

4. Complete records of usage for voice, SMS, data sessions, Internet Protocol ("IP") addresses, wireless internet usage including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions.

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B. The following historical stored telecommunications records associated with the SUBJECT ACCOUNT for the time period of 60 days preceding the date the Warrant is executed up to the present:**

1. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the SUBJECT ACCOUNT, including:

   a. The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   b. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the SUBJECT TELEPHONE NUMBER.

   c. RTT records, PCMD records, TDOA, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.);

**C. The following prospective data associated with the SUBJECT TELEPHONE NUMBER for the time period of 30 days from the date the Warrant is executed (or the date the monitoring of the SUBJECT TELEPHONE NUMBER's location becomes operational, whichever is later:**

1. Information associated with each communication to and from the SUBJECT TELEPHONE NUMBER for a period of 30 days from the date of this warrant, during all times of day and night, including:

   a. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   b. Source and destination telephone numbers;

   c. Date, time, and duration of communication; and complete records of usage for voice, SMS, data sessions, Internet Protocol ("IP") addresses, wireless internet usage including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

   d. All available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna

towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the SUBJECT TELEPHONE NUMBER.

    e. RTT records, PCMD records, TDOA, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.);

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes evidence, instrumentalities or contraband of violations of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) involving ELIJAH FIGG ("BANG").

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the TELEPHONE SERVICE PROVIDER in order to locate the things particularly described in this Warrant.

## ATTACHMENT B-2

Pursuant to an investigation involving a felon in possession of a firearm and ammunition, in violation of 21 U.S.C. § § 846 and 843(b) and 18 U.S.C. § 2, this warrant authorizes the officers to whom it is directed to determine the location of the SUBJECT TELEPHONE NUMBER identified in Attachment A by collecting and examining:

1. Radio signals emitted by the SUBJECT TELEPHONE NUMBER for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. Radio signals emitted by the SUBJECT TELEPHONE NUMBER in response to radio signals sent to the cellular devices by the officers,

for a period of 30 days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications or any other content, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).